IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GARY VINYARD, | ) | CASE NO. 1:12 CV 601 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by plaintiff Gary Vinyard under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Vinyard's application for disability insurance benefits.[2] The Commissioner has filed an answer,[3] as well as the transcript of the administrative proceedings.[4] Pursuant to my initial

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 8.

[2] ECF # 1.

[3] ECF # 5.

[4] ECF # 6.

order[5] and procedural order,[6] the parties have briefed their positions[7] and have filed supporting charts[8] and the fact sheet.[9] The parties have participated in an oral argument.[10]

For the reasons stated below, I will find that the Commissioner's decision is not supported by substantial evidence and so must be reversed and the case remanded for further proceedings.

## Facts

**A.     Decision of the Administrative Law Judge ("ALJ")**

Vinyard, who was born in 1958, is a high school graduate.[11] His past work was as a tool and die maker.[12]

---

[5] ECF # 4.

[6] ECF # 12.

[7] ECF # 15 (Vinyard's brief); ECF # 18 (Commissioner's brief).

[8] ECF # 15, Attachment 1 (Vinyard's charts); ECF # 18, Attachment 1 (Commissioner's charts).

[9] ECF # 11 (Vinyard's fact sheet).

[10] ECF # 20.

[11] ECF # 15 at 3 (citing transcript).

[12] *Id.*

The ALJ, whose decision became the final decision of the Commissioner, found that Vinyard had severe impairments consisting of progressive sensory peripheral neuropathy.[13] The ALJ then made the following finding regarding Vinyard's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never balance, climb ladders, ropes, or scaffolds, or work around unprotected heights.[14]

The ALJ decided that this residual functional capacity precluded Vinyard from performing his past relevant work as a tool and die maker.[15]

That said, however, the ALJ found with testimony from a vocational expert ("VE") that Vinyard had acquired work skills from his past relevant work that are transferable to other jobs existing in sufficient numbers in the national economy.[16] Thus, the ALJ concluded that Vinyard was not under a disability.[17]

## 2. *Issues on judicial review*

This case presents two issues for decision:

- The ALJ gave the opinion of Vinyard's treating physician, Robert Shields, Jr., M.D., little weight; while assigning great weight to the opinion of the medical expert Hershel Goren, M.D. and some weight to the opinion of consulting examining physician Mehdi Saghafi, M.D.

---

[13] Transcript ("Tr.") at 11.

[14] *Id.* at 13.

[15] *Id.* at 16.

[16] *Id.* at 17.

[17] *Id.* at 18.

       and state agency reviewing physician Michael Stock, M.D. Does substantial evidence support the weight assigned by the ALJ to the opinions of these medical sources?

- The ALJ found Vinyard credible only to the extent of his statements consistent with the RFC finding. Does substantial evidence support this discounting of Vinyard's credibility?

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

[35] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[37] Second, the ALJ must identify for the record evidence supporting that finding."[38] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[39]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[40] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving

---

[36] *Id.*

[37] *Wilson*, 378 F.3d at 546.

[38] *Id.*

[39] *Id.*

[40] *Rogers*, 486 F.3d at 242.

-8-

those opinions controlling weight.[41] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[42] or that objective medical evidence does not support that opinion.[43]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[44] The Commissioner's *post hoc* arguments on judicial review are immaterial.[45]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[43] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[44] *Blakley*, 581 F.3d at 407.

[45] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[46]

- the rejection or discounting of the weight of a treating source without assigning weight,[47]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[48]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[49]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[50] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[51]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[52] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless

---

[46] *Blakley*, 581 F.3d at 407-08.

[47] *Id.* at 408.

[48] *Id.*

[49] *Id.* at 409.

[50] *Hensley*, 573 F.3d at 266-67.

[51] *Friend*, 375 F. App'x at 551-52.

[52] *Blakley*, 581 F.3d 399.

since substantial evidence exists to support the ultimate finding.[53] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[54]

In *Cole v. Astrue*,[55] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[56]

**B.    Application of standard – substantial evidence does not support the Commissioner's decision.**

This case essentially turns on an opinion by Robert Shields, Jr., M.D., Vinyard's treating neurologist.

In May, 2010, Dr. Shields completed a physical capacity opinion that stated, among other things, that Vinyard could rarely handle, feel, or perform fine manipulation.[57] Dr. Shields also opined that Vinyard would need to take extra breaks in addition to those that

---

[53] *Id*. at 409-10.

[54] *Id*. at 410.

[55] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[56] *Id.* at 940.

[57] Tr. at 518.

were normally scheduled and would require a sit/stand option.[58] The ALJ gave Dr. Shields's opinion little weight.[59] In so doing, the ALJ did acknowledge Dr. Shields as a treating source but discounted the opinion in a brief statement that indicated only that Dr. Shields's postural limitations were "overly restrictive" and "inconsistent with the objective medical evidence and the claimant's activities of daily living."[60]

The ALJ, by contrast, did ascribe "some weight" to the functional capacity opinion of Mehdi Saghafi, M.D.,[61] a state consulting examiner who opined in 2009 that Vinyard's grasp, manipulation, pinch, and fine coordination were normal.[62] The ALJ also gave "great weight" to the opinion of Hershel Goren, M.D., who testified at the hearing as a medical expert.[63] Although the ALJ characterized Dr. Goren's opinion as "the most comprehensive of all opinions in this case,"[64] the opinion did not address Vinyard's capacity for standing or walking, nor did it mention his manipulative capacity.

In here considering the treatment given to Dr. Shields's opinion – and particularly that portion of the opinion stating that Vinyard could rarely or never perform fine manipulation

---

[58] *Id*.

[59] *Id.* at 16.

[60] *Id*.

[61] *Id.*

[62] *Id*. at 15 (citing record).

[63] *Id*.

[64] *Id*. at 15-16.

– I note first that the VE testified at the hearing that without the ability to do fine manipulation there would be no jobs available to Vinyard at the sedentary level.[65] As noted, in discounting the opinion of Dr. Shields, a treating source, the ALJ made no analysis of Dr. Shields's conclusions about Vinyard's lack of ability to do fine manipulation. Nor did the ALJ discuss the fact that Dr. Goren – in purportedly the most comprehensive opinion – was silent on fine manipulation.

Further, the ALJ does not explain why the 2009 opinion of Dr. Saghafi that Vinyard has normal manipulation is given greater weight than the 2010 opinion of Dr. Shields that Vinyard has only rare ability in this regard, especially since the ALJ had already indicated that Vinyard's peripheral neuropathy was "progressive" in nature,[66] and so could reasonably be expected to worsen from 2009 to 2010.

As is always the case in matters such as this, it bears restating that the lack of discussion by the ALJ on the issue delineated above does not mean that the record is without any reason to prefer the opinion of Dr. Saghafi over that of Dr. Shields. But the good reasons requirement means that the ALJ here is required to have provided that reason in a way that is clearly stated and intelligible to the reviewing court. When no such analysis at all is undertaken, the appropriate course is to remand the matter for further proceedings.

---

[65] *Id*. at 83.

[66] *See*, *id.* at 11.

-13-

I also observe that with the decision to remand the case for additional proceedings, the issue of Vinyard's credibility need not be adjudicated now. But on remand, if Dr. Shields's functional opinion is discounted for stated good reasons, then any assessment of Vinyard's credibility as it bears upon a final RFC finding should be reconsidered.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Vinyard had no disability. Accordingly, the decision of the Commissioner denying Vinyard disability insurance benefits is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: March 26, 2013                                s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge